EMMA RONAN *v.* HARRY J. STANNARD.

May Term, 1927.

Present: WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed October 5, 1927.

*Witnesses—Redirect Examination.*

Where cross-examination of witness had been such as to be an obvious
    attempt to discredit him by showing that he had testified differ-
    ently on a previous occasion, it was proper, on redirect examina-
    tion, to show such of his former testimony as tended to modify
    or qualify effect of such parts thereof as were elicited on cross-
    examination.

ACTION OF TORT for personal injuries received in automobile
collision. Plea, general issue: Trial by jury at the June Term,
1926, Caledonia County, *Thompson*, J., presiding. Verdict and
judgment for the plaintiff. The opinion state the case. *Affirmed.*

*Porter, Witters & Longmoore* for the defendant.

*Searles & Graves* for the plaintiff.

SLACK, J. The plaintiff seeks to recover for personal in-
juries which she sustained when a Ford touring car in which she
was riding and a Chevrolet coupe driven and operated by de-
fendant collided on the main highway between the villages of
Barton and Orleans in this State. She had a verdict and judg-
ment below, and the case is here on defendant's exceptions.

Plaintiff's evidence, which was undisputed, showed that the
car in which she was riding at the time of the accident was
going north from the village of Barton toward the village of
Orleans; that defendant was traveling in the opposite direction;
that the two cars collided; that the rim of the left forward wheel
of the car in which plaintiff was riding was completely torn off
by the collision; that that car continued north some distance
after the collision, running, so far as the broken wheel was con-
cerned, on the end of the spokes, and then turned to the left and
went over the bank on the west side of the highway.

There was a sharp conflict in the evidence respecting the distance the car ran after the collision before it went over the bank, or turned toward the bank. The plaintiff's evidence tended to show that the distance did not exceed 15 or 20 feet, while defendant's evidence tended to show that it was approximately 75 feet.

William Vancour, a witness called by plaintiff, testified on direct examination, in substance, that he saw tracks in the highway that looked "as though it was spokes of the wheel digging into the road"; that such marks were on the right-hand side of the road going north, and that they extended 12 or 15 feet south of the gap in the fence, where the car went over the bank. On cross-examination, he was asked and answered respecting his testimony at a former trial of the case as follows:

"Q. I want to ask you if your memory may not be refreshed by referring to what you testified to here before * * * were you asked this question: 'Q. You may tell what you saw of that nature? A. Well, it was the marks I could see, it was the mark where the wheel went over the running board, it struck the ground and then it sheered right off over the bank it made a hole there where it struck, and you could see where the hub rubbed. Q. What did those places look like? A. Oh, they looked all marked up in the road, all chawed up, straight across. Q. How long did the track of that kind where the ground was cut up in the manner you have indicated extend? A. Oh, about 15 feet. Q. Did it run that distance south of the gap in the fence? A. No.' Did you testify to that before? A. I don't remember that I did. Q. Was it true that those marks didn't extend south of the gap in the fence? A. I don't remember what I testified before. Q. Well, what do you say now whether they did extend south of the gap in the fence? A. Well, they did. * * * Q. And were you asked, 'Did it run any distance south of the gap in the fence?' And did you answer, 'No', when you testified here before? A. I don't know, I couldn't say, I don't remember."

On redirect examination, the witness was permitted to testify, subject to defendant's exception that it was immaterial, that:

"Q. In your cross-examination by Bro. Porter at the other trial were you asked this question, 'And how far going

north and south did that track continue which showed the spokes of the wheel?' And did you answer 'About 15 feet'? A. I did."

In the circumstances this evidence was admissible. The cross-examination was obviously an attempt to discredit the witness by showing that he had testified differently on a previous occasion. This being so it was proper on reexamination to show such of his former testimony as tended to modify or qualify the effect of such parts thereof as were elicited on cross-examination. *State* v. *Ward,* 61 Vt. 153, 188, 17 Atl. 483; *State* v. *Bean,* 77 Vt. 384, 392, 60 Atl. 807. To the same effect are *Wilkerson* v. *Eilers,* 114 Mo. 245, 21 S. W. 514; *Lowe* v. *State,* 97 Ga. 792, 25 S. E. 676; *Huntley* v. *Territory,* 7 Okla. 60, 54 Pac. 314; *Wilson* v. *Wilson,* 35 Tex. Civ. App. 192, 79 S. W. 839; *Powers* v. *United States* (C. C. A.), 294 Fed. 512; *State* v. *Schomaker,* 149 Minn. 141, 182 N. W. 957; *Clymer* v. *Com.,* 23 Ky. Law Rep. 1041, 64 S. W. 409. Such was the purpose and effect of this evidence. Moreover, the materiality of this evidence, the only question raised by the exception, cannot be doubted.

Continuing the redirect examination of the same witness the following occurred:

"Q. And were you asked this question by Bro. Porter in cross-examination: 'So that all the tracks made in the road north and south before the car turned to go over the bank by the spokes was about 15 feet?' A. Yes."

(Mr. Porter)   Now I object to this.

(The Court)   I have my doubts as to the admissibility of it, but we will receive it and allow the defendant an exception.

(Mr. Porter)   Object to it on the ground it is immaterial.

(The Court)   You may have an exception."

Error does not appear in the admission of the answer already in evidence, and since the record shows that further inquiry along this line was abandoned the exception is without merit.

This disposes of all questions briefed. .

*Judgment affirmed.*