Lemire, James R., J.
This is a civil action in which the plaintiff, Trahan Bros., Inc. (“Trahan”) alleges that the defendant, Pelletier’s Building Supply Co., Inc. (“Pelletier”), failed to pay the outstanding balance due on a promissoiy note, in breach of an unlimited guaranty (the “Guaranty”) securing payment of the note. Trahan now moves for summary judgment on the grounds that; 1) there is no dispute that Pelletier has failed to perform its obligations under the Guaranty, and that 2) Pelletier cannot raise any legitimate defenses to payment under the Guaranty. For the following reasons, Trahan’s motion is hereby ALLOWED.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party, as revealed by the summary judgment record, are as follows.
Trahan formerly operated a building supply business in Southbridge, Massachusetts. According to an Affidavit of David M. Pelletier, the parties entered into a letter of intent relative to Pelletier’s purchase of Trahan’s business in November 2002. (Pelletier Aff. at par. 3.) In this letter, Trahan agreed to purchase an abutting parcel (the “Morrisey Parcel”) and assign its rights to the parcel to Pelletier. (Pelletier Aff. at paras. 4-5.) Pelletier would purchase both the Morrisey Parcel and the Trahan parcel (together, the “Real Estate”) at the same time. (Pelletier Aff. at par. 5.) Pelletier claims that the purchase of the Real Estate was conditioned on its ability to lawfully construct a warehouse on the Morrisey Parcel, and further that Margaret M. Farrand (“Farrand”), Trahan’s owner, was well aware of this condition. (Pelletier Aff. at paras. 10, 11, 12, 13.)
During the early months of 2003, both parties took efforts to determine whether a warehouse could be built on the Morrisey Parcel. In January 2003, Trahan engaged Berlin Engineering Associates, Inc. to draw a site and conservation plan showing the proposed warehouse. (Pelletier Aff. at par. 19.) In February 2003, Trahan petitioned the local Conservation Commission to build the warehouse on the Morrisey Parcel, and shortly thereafter the petition was approved. (Pelletier Aff. at par. 20.) On March 24, 2003, Trahan and Pelletier entered into a purchase and sale agreement (“P&S Agreement”) whereby Pelletier agreed to purchase Trahan’s business, including its assets and real estate.
*71 In April 2003, Southbridge’s building inspector advised Pelletier that the Morrisey Parcel could be improved with a warehouse for use in conjunction with the business. (Pelletier Aff. at par. 21.) Pelletier purchased Trahan’s business on April 17, 2003. On that date, David M. Pelletier, Richard A. Pelletier and Melissa A. Pelletier, Trustees of D&M Realty Trust (“the Trust”) executed and delivered to Trahan a promissory note wherein the Trust promised to pay Trahan the principal sum of $180,000.00, with six percent (6%) annual interest, in equal monthly installments of $1,998.38 beginning on May 17, 2003 (the “Note”). That same day, Pelletier executed and delivered the Guaranty to Trahan, thereby guaranteeing all obligations of the Trust under the Note.
In March 2004, Pelletier applied for, and was issued, a permit to construct the warehouse. (Pelletier Aff. at par. 22.) Pelletier spent approximately $400,000 to construct the warehouse. (Pelletier Aff. at par. 23.) It received an occupancy permit in July 2004. (Pelletier Aff. at par. 22.) Pelletier began to receive notice that abutters were challenging its use of the Morrisey Parcel for storage, and were requesting that the warehouse be removed. (Pelletier Aff. at par. 24.) In November 2005, the local zoning board ordered Pelletier to remove the warehouse, and required that the Morrisey Parcel not be used for storage. (Pelletier Aff. at par. 25.) In a decision entered in August 2006, the Land Court (Scheier, C.J.) upheld the zoning board’s decision. (Pelletier Aff. at par. 25.) As a result, Pelletier was forced to close the business it purchased from Trahan and to cease all operations at the Real Estate, and has lost approximately $500,000.00. (Pelletier Aff. at par. 26, 27.)
Trahan filed this complaint on February 1, 2008, alleging the Trust has failed to make the required payments since September 2007 in breach of the Guaranty, and that Pelletier owes Trahan principal in the amount of $114,956.75 plus accrued and unpaid interest, subsequently accruing interest and cost of collection, including attorneys fees. Trahan moved for summary judgment on May 22, 2008.
DISCUSSION
I. Standard of Review
Summary judgment shall be granted when there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(e); Cassesso v. Comm’r of Corrections, 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law, even if the moving party would not have the burden of proof on the issue at trial. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden by either submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Comm’cns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
II. Pelletier’s Claim of Mutual Mistake
In its Opposition to Trahan’s Motion for Summary Judgment, Pelletier argues that prior to the consummation of the P&S Agreement, both parties were well aware that Pelletier would only complete the purchase of Trahan’s business if the Morrisey Parcel could be legally improved with a warehouse. Because the Guaranty is silent with regard to this condition, Pelletier contends that the Guaranty does not reflect the true intent of the parties and was the product of mutual mistake, and as such, is subject to reformation. Pellet-ier then argues that a dispute of material facts exists regarding the intent of the parties, such that summary judgment should be denied.
In cases where mutual mistake is alleged, the parol evidence rule will not exclude extrinsic evidence of the parties’ intent. Mickelson v. Barnet, 390 Mass. 786, 792 (1984) (and cases cited). This court has traditionally “required that a party present ‘full, clear, and decisive’ proof of mistake in order to be entitled to reformation.” Id., quoting Stockbridge Iron Co. v. Hudson Iron Co., 107 Mass. 290, 317 (1871). Pelletier’s suggestion that a mutual mistake existed is based solely on an affidavit from David M. Pelletier, whereby he claims that “at all relevant times, Farrand was well aware that Pelletier would only proceed with the purchase of Trahan’s building supply business and the Trahan Parcel if the business could be expanded by constructing a warehouse on the Morrisey Parcel.” (Pelletier Aff. at par. 13.) As the non-moving party, Pelletier bears the burden to “respond and allege specific facts which would establish the existence of material fact in order to defeat a motion for summary judgment.” Pederson, 404 Mass. at 17. David Pelletier’s statement is not supported by any facts available in the summary judgment record. “Bare assertions and conclusions regarding. . . understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Envt’L Sews. (NJ), Inc., 416 Mass. 684, 696 (1993). Thus, Pelletier’s assertions alone are insufficient to create a triable issue of material fact. Cataldo Ambulance Sew., Inc. v. Chelsea, 426 Mass. 383, 387 (1988).
Pelletier also argues that “both parties exercised reasonable care and good faith efforts to insure that a warehouse would legally be constructed on the Morrisey Parcel” to support its claim that a mutual mistake regarding the intent of the parties existed. Trahan’s efforts to help secure a proper building permit for the Morrisey parcel are irrelevant, and provide no excuse for nonpayment under the Guaranty. Paragraph 23 of the P&S Agreement unequivocally states that “[Pelletier’s] Performance under this Agreement *72 will be subject to the further following conditions . . . [Pelletier’s] reasonable satisfaction that the Real Estate may be developed in a manner consistent with [Pelletier’s] current expansion plans . . .” By closing on the purchase, Pelletier unilaterally agreed that it was satisfied that the Real Estate could be developed in accordance with its plan to construct a warehouse.
Further, the uncontested facts show that Pelletier successfully obtained construction and occupancy permits from the Town of Southbridge, and that abut-ters only challenged the legality of Pelletier’s use of the Morrisey Parcel for storage after such permits had been obtained and construction completed. Regardless of the parties’ intentions at the time of the sale of the Real Estate, neither party could have known or anticipated that the zoning board would later order the warehouse be removed. Pelletier’s claim of mutual mistake is misplaced. A mutual “mistake must involve a fact capable of ascertainment at the time the contract was entered into, and not a mere expectation or opinion about future events.” Gloucester Landing Assoc. Ltd. P’ship v. Gloucester Redev. Auth., 60 Mass.App.Ct. 403, 413-14, quoting LeFleur v. C.C. Pierce Co., 398 Mass. 254, 258 (1986).
Pelletier finally argues that because the Guaranty is silent regarding the condition that the Morrisey Parcel could be legally improved with a warehouse, it does not reflect the intent of the parties. Under the Guaranty, the Trust unconditionally guaranteed that Pelletier would pay and perform “all indebtedness, obligations, undertakings and liabilities . . . , certain or contingent, of [Pelletier] to [Trahan] now or hereafter owing or incurred .. . which are chargeable to [Pelletier] either by law or under the terms of [TrahanJ’s agreement with [Pelletier]...” Pelletier’s obligations to pay under the promissory note are spelled out by the conditions agreed to in the P&S Agreement. Any unstated condition, such as the one Pelletier refers to, were discharged when Pelletier accepted the deed to the Morrisey parcel from Trahan, under the so-called “merger doctrine.” Pybus v. Grosso, 317 Mass. 716, 717 (1945) (“The acceptance of a deed of conveyance of land from one who has previously contracted to sell it, discharges the contractual duties of the seller to the party so accepting except such as are embodied in the deed,” quoting Restatement of Contracts §413).
III. Conclusion
Pelletier does not contest the allegation that it failed to pay Trahan under the Note. It argues instead that a mutual mistake exists in that the Guaranty does not reflect the intent of the contracting parties. Pelletier has not raised a disputed issue of material fact. Therefore, Trahan’s Motion for Summary Judgment is ALLOWED.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff Trahan Bros., Inc.’s Motion for Summary Judgment is ALLOWED.